**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF FLORIDA**
**PENSACOLA DIVISION**

**LANEY FARMER,**

**Plaintiff,**

**v.** **CASE NO. 3:25cv1530-MCR-HTC**

**GRILLHOUSE NAVARRE LLC,**
**et al.,**

**Defendants.**
_______________________________________/

**ORDER**

Plaintiff Laney Farmer filed suit against her employers, the Grillhouse Navarre LLC; TG Navarre Holdings, LLC; and TNT Navarre LLC; and Thomas Gialamas. Farmer alleges that Gialamas subjected her to sexual harassment in the workplace and retaliation after she complained, resulting in her constructive discharge. Specifically, the Amended Complaint alleges claims of sexual harassment/hostile environment in violation of federal and state law against all Defendants, in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e–2, 2000e–3; the Florida Civil Rights Act ("FCRA"), Fla. Stat. § 760, *et seq*.; and the Florida Private Sector Whistleblower Act, Fla. Stat. §§ 448.101–448.105 (Counts I, II, III, IV, and VIII); claims of sexual assault and civil battery against Gialamas (Counts VI and VII), and negligent supervision and

retention against the entity Defendants (Count V). The Grillhouse answered the Amended Complaint whereas TG Navarre, TNT Navarre, and Gialamas have moved to dismiss. After careful review, the motions are denied.

## I. Background[1]

Farmer contends that on July 16, 2024, when she was a 19-year-old female, she began working at the Grillhouse, a waterfront steak and seafood bar and restaurant in Navarre, Florida. Shortly after this, on September 1, 2024, Gialamas began working at the Grillhouse as her manager and overseeing the day-to-day operations as part of an asset purchase agreement. Gialamas was negotiating a purchase of the Grillhouse through the entities TG Navarre and/or TNT Navarre as the sole manager of both entities.[2] The Agreement for Deed and Bill of Sale between Grillhouse and TG Navarre was signed on December 13, 2024, the date of closing. A separate Indemnification Agreement between TG Navarre, Gialamas, and Grillhouse, signed the same day, reflects that TG Navarre and Grillhouse had entered into an Asset Purchase and Sale Agreement on September 6, 2024, and that

---

[1] The facts are taken from the First Amended Complaint and are assumed to be true for purposes of the motion to dismiss. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-556 (2007).

[2] While the sale agreement is between TG Navarre and Grillhouse, Farmer contends that TNT Navarre is a necessary party to the litigation because it acquired employment practice liability insurance for Grillhouse and/or TG Navarre.

Gialamas, as employee and manager of Grillhouse, commenced "possession, operation, and management" of the business on September 1, 2024, and would continue to operate it from then through the date of closing.[3] Also, TG Navarre agreed to assume all potential liabilities of Grillhouse that might arise related to Gialamas's operation and management of the Grillhouse from September 1, 2024, through the date of closing, and the Grillhouse agreed to hold TG Navarre harmless for liabilities arising before September 1, 2024.

Farmer contends that when Gialamas became her manager, he would regularly refer to her as "honey," "sexy," "flirty," and "koukla"[4] while she was working and began to send her inappropriate text messages about what he wanted her to wear and also asking for pictures of her and her "hot" friends. Within a short time, his unwanted behavior escalated, and he began placing his hands on Farmer's hips during her work shifts and also engaging in sexual behavior with his girlfriend in her presence to ensure she saw the conduct, such as grabbing his own girlfriend's buttocks and kissing her during Farmer's shifts. Farmer alleges that Gialamas directed her to dress "like a sidepiece" or "more like a woman" and ordered her to

[3] In relevant part, the Indemnification Agreement defines Gialamas as a party to the agreement both "individually" and collectively with TG Navarre, stating: "collectively, Gialamas and TG Navarre Holdings, LLC, are 'TG Navarre.' " ECF No. 24–1.

[4] Farmer alleges that this word is Greek and translates to "doll" in English.

put on a pair of shorts and bend over for him. He offered her alcohol, though she was underage, and offered her other gifts that she rejected. He informed her that he wanted to bring her and other pretty girls dressed provocatively in tiny shirts and fishnet tights with him to the brewery, an invitation she declined. Farmer alleges that the sexual harassment continued until October 8, 2024, when Gialamas slapped her buttocks and then reached under her skirt while she was at the host stand, in front of guests and other employees. Farmer reacted defensively to stop the conduct and described the incident as humiliating and embarrassing. Gialamas then sent her home to change clothes and return to work.

Farmer reported the incident and other sexual harassment on October 18, 2024. She was interviewed by the Grillhouse general manager, Dakota Dilmore, and the Grillhouse kitchen manager, Nicholas Brummette, about Gialamas's behavior. Farmer alleges that Gialamas was also their manager and the soon-to-be owner, and Farmer contends he was already providing additional benefits to Grillhouse personnel, including Dilmore.

After this meeting no disciplinary action was taken against Gialamas, and his behavior towards Farmer suddenly became hostile and retaliatory. Farmer contends that Gialamas ordered her to work in the outside dining area only, though it was beginning to get cold, and he expressly prohibited her from entering the inside dining

area for any reason, not even to use the restroom or to obtain condiments for customers. When she attempted to enter the inside dining area, Gialamas would scream at her to "get out" and gave no reason for the sudden change in the terms of her employment. Gialamas also changed her work schedule from full time to only one or two shifts per week. Farmer repeatedly asked for more shifts but was never given additional shifts comparable to her work before her complaints. She contends that her income dropped to an unsustainable level as she was unable to earn a livable wage. Farmer contends she was constructively discharged on December 10, 2024.

## II. Discussion

A complaint that fails to state a claim is subject to dismissal. *See* Fed. R. Civ. P. 12(b)(6). To state a claim, the complaint must set out sufficient factual matter that, taken as true, makes out a facially plausible claim. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (facial plausibility arises "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged"); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-556 (2007) ("Factual allegations must be enough to raise a right to relief above the speculative level."). "Threadbare recitals of a cause of action's elements," conclusory statements, and labels or mere legal conclusions are not entitled to a

presumption of truth and are insufficient to state a claim. *Iqbal*; 556 U.S. at 678; *Twombly*, 550 at 555.

Title VII makes it unlawful for an employer to "discharge any individual, or otherwise to discriminate against any individual with respect to [their] compensation, terms, conditions, or privileges of employment" because of the individual's sex.[5] 42 U.S.C. § 2000e–2(a)(1). Title VII also includes an "opposition clause" that prohibits an employer from retaliating against an employee because the individual opposed a practice that is unlawful under Title VII.[6] 42 U.S.C. § 2000e–3(a). Internal complaints of workplace harassment constitute statutorily protected activity under Title VII, as well as formal EEOC complaints. *See Pipkins v. City of Temple Terrace, Fla.*, 267 F.3d 1197, 1201 (11th Cir. 2001). Because Florida applies Title VII analysis to the FCRA claims and to claims of retaliatory discharge under the Florida Whistleblower Act, these state law claims need not be separately

---

[5] To state a claim of harassment/hostile work environment based on sex under Title VII, the plaintiff must plausibly allege that she was subjected to unwelcome harassment in the workplace because of her sex and that the harassment was severe or pervasive enough to alter the terms and conditions of her employment, and her employer is responsible for that environment under a theory of either vicarious or direct liability. *See Edwards v. Prime, Inc.*, 602 F.3d 1276, 1300 (11th Cir. 2010); *Miller v. Kenworth of Dothan, Inc.*, 277 F.3d 1269, 1275 (11th Cir. 2002).

[6] To state a prima facie claim of retaliation under Title VII, a plaintiff must allege: (1) that she engaged in an activity protected by Title VII; (2) that she suffered an adverse employment action; and (3) that there is a causal connection between the two. *See Gogel v. Kia Motors Mfg. of Ga., Inc.*, 967 F.3d 1121, 1134 (11th Cir. 2020) (*en banc*).

analyzed. *See Alvarez v. Royal Atl. Devs., Inc.*, 610 F.3d 1253, 1271 (11th Cir. 2010) (FCRA); *Rustowicz v. N. Broward Hosp. Dist.*, 174 So. 3d 414, 419 (Fla. 4th DCA 2015) (Whistleblower claims).

Gialamas moves to dismiss the claims of sexual harassment and retaliation asserted against him, arguing that he cannot be held personally liable for sexual harassment or retaliation because he was not employer as defined in the statute. It is well established that Title VII provides relief "against only the employer not against individual employees whose actions would constitute a violation of the Act." *Dearth v. Collins*, 441 F.3d 931, 933 (11th Cir. 2006) (clarifying that Title VII relief is available only against the employer, "regardless of whether the employer is a public company or a private company"). Under Title VII, and "employer" is "a person[[7]] engaged in an industry affecting commerce who has fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year, *and any agent* of such a person." [8] 42 U.S.C.

[7] Title VII broadly defines "person" including "one or more individuals, governments, governmental agencies, political subdivisions, labor unions, partnerships, associations, [and] corporations," among others. 42 U.S.C. § 2000e(a).

[8] Under the FCRA, "employer" is defined the same–"any person employing 15 or more employees for each working day in each of 20 or more calendar weeks in the current or preceding calendar year, and any agent of such a person." Fla. Stat. § 760.02 (7). Under the Florida Whistleblower Act, an "employer" is "any private individual, firm, partnership, institution, corporation, or association that employs ten or more persons." Fla. Stat. § 101(3). As already noted, a separate analysis is not required for the state claims.

§ 2000e(b) (emphasis added). The Eleventh Circuit has stated that the "only proper individual defendants in a Title VII action would be supervisory employees in their capacity as agents of the employer." *Hinson v. Clinch Cnty., Georgia Bd. of Educ.*, 231 F.3d 821, 827 (11th Cir. 2000); *see also Busby v. City of Orlando*, 931 F.2d 764, 772 (11th Cir. 1991) (stating "the proper method for a plaintiff to recover under Title VII is by suing the employer, either by naming the supervisory employees as agents of the employer or by naming the employer directly").

Farmer's Amended Complaint sufficiently alleges that Gialamas was either a joint employer or agent of Grillhouse during the relevant time. It is plausibly alleged that he was an employee of Grillhouse, but also that he had entered into an asset and purchase agreement and indemnity agreement individually with TG Navarre and was operating and managing the Grillhouse pursuant to that agreement between September 2024 and December 10, 2024, the alleged date of Farmer's constructive discharge. The facts asserted and taken as true are sufficient at this stage to state a plausible claim; whether she can prove her claim that he was an agent or a joint employer is a question of fact to be resolved on a fully developed record.

Gialamas also argues that Farmer has not alleged a legally sufficient civil claim for sexual assault because she failed to plead the elements of the sexual battery statute pursuant to Fla. Stat. § 794.011(1)(j), which requires "penetration or union

with the sexual organ of another." Gialamas overlooks that Farmer has not attempted to plead sexual battery. Instead, she has pled a claim of "sexual" assault based Gialamas's alleged actions of slapping her buttocks and reaching under her skirt, creating threating to injure her and placing her in fear of peril coupled with his apparent present ability to sexually assault her. This is sufficient to state a claim of assault. *See* Fla. Stat. § 784.011(1) (defining "assault" as an "intentional, unlawful threat by word or act to do violence to the person of another, coupled with an apparent ability to do so, and doing some act which creates a well-founded fear in such other person that such violence is imminent"). It is also sufficient to state a claim of civil battery. *See* Fla. Stat. § 784.03(1)(a) (requiring actually and intentionally touching or striking another person against the will of the other). Gialamas makes no reference or argument regarding the plausibility of those claims, as alleged in Counts VI and VII. His argument on sexual battery is thus summarily rejected as irrelevant, and his motion is denied.

The entities of TG Navarre and TNT Navarre also moved to dismiss. Their sole argument is that the negligent supervision and retention claim fails as a matter of law because there is no underlying common law tort of sexual harassment in Florida law. Florida recognizes a claim of negligent retention or supervision of an incompetent, dangerous agent in circumstances showing "that the employer knew or

should have known of the agent's or servant's incompetence and dangerousness, and the likelihood or foreseeability that such agent or servant would injure a third person, growing out of the employment status." *Harris v. Cellco P'ship*, No. 21-81129-CV, 2021 WL 8155331, at *3 (S.D. Fla. Dec. 29, 2021) (quoting *Storm v. Town of Ponce Inlet*, 866 So. 2d 713, 716 (5th DCA 2004)). The claim must be based on an injury from an independent tort recognized under Florida common law and committed by an employee. *Id.* And, it is true that "Florida does not recognize a common law cause of action for negligent failure to maintain a workplace free of sexual harassment." *Id.* (quoting *Castleberry v. Edward M. Chadbourne, Inc*., 810 So. 2d 1028, 1030 (Fla. 1st DCA 2002)). While Farmer describes Gialamas's conduct as sexually harassing, the entities have ignored that the alleged harassment included that Gialamas committed an assault or battery and that Farmer has also separately pled those independent torts. Not surprisingly, the entities make no argument that assault or battery are not independent torts recognized under Florida common law. The motion is denied.

Accordingly:

1. Defendant Thomas Gialamas's Motion to Dismiss, ECF No. 26, is **DENIED**.

2. Defendants TG Navarre Holdings, LLC, and TNT Navarre LLC's Motion to Dismiss, ECF No. 27, is **DENIED**.

**DONE AND ORDERED** this 16th day of November 2026.

*M. Casey Rodgers*

**M. CASEY RODGERS**
**UNITED STATES DISTRICT JUDGE**